**Entered on Docket**
**January 29, 2013**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**The following constitutes
the order of the court. Signed January 29, 2013**

_____
**Charles Novack
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JOHN ANTHONY SALOMON,<br><br>    Debtor. | Case No. 10-59862 CN<br><br>Chapter 7 |
| MATTHEW TYE,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN ANTHONY SALOMON,<br><br>    Defendant. | Adversary No. 10-5416<br><br>**MEMORANDUM DECISION** |

    On November 20, 2012, this court conducted a trial on plaintiff Matthew Tye's ("Tye") adversary complaint. The following constitutes this court's findings of fact and conclusions of law under F.R.B.P. 7052.

    Tye's claims for relief arise from his tenancy in an Irvine, California residence owned by defendant John Anthony Salomon ("Salomon"). From approximately June 2007 through March 2009, Tye rented a bedroom, adjoining bathroom, and the shared use of the residence's common space from Salomon. Tye alleges that in or about June 2008, Salomon commenced an unrelenting campaign of harassment which deprived him of his tenancy rights and which ultimately forced him

1

to vacate the Irvine residence. Tye asserts that Salomon's conduct (which is described in detail below) violated California Civil Code §§ 1942.5, 789.3 and 1940.2, and gives rise to non-dischargeable claims under Bankruptcy Code § 523(a)(6). Critically, Tye further asserts that he is entitled to judgment on his § 523(a)(6) claims by virtue of his Orange County Superior Court default judgment against Salomon. In November 2008, Tye commenced litigation against Salomon and several other parties in Orange County Superior Court and obtained a $340,000 default judgment against Salomon on his tenancy rights causes of action. Salomon unsuccessfully moved to vacate the default judgement, and then timely appealed the default judgment and the denial of his motion to vacate. That appeal was pending when Salomon filed his Chapter 7 bankruptcy in September 2010. Salomon's Chapter 7 filing stayed his appeal, and the parties never obtained relief from this court to pursue it.

Tye asserts that this court must fully defer to the Orange County default judgment and simply determine whether the default judgment supports the entry of a non-dischargeable judgment against Salomon. This court rejected this legal theory when it denied Tye's motions *in limine*. Because Tye's trial strategy was fully predicated on this argument, this court will summarize Tye's argument and the reasons why this theory is without merit.

## **OVERVIEW OF THE STATE COURT AND BANKRUPTCY COURT LITIGATION**

In November 2008, Tye sued Salomon, Stacy Gilty, and several "Doe" defendants in Orange County Superior Court (Case No. 30-2008-0014389) (the " Superior Court") under various causes of action including those created by Civil Code §§ 1942.5, 789.3 and 1940.2. The Superior Court entered a $340,000 default judgment in Tye's favor in January 2010. The default judgment included substantial punitive damages. Salomon unsuccessfully moved to vacate the default judgment, and thereafter timely appealed the entry of the default judgment and the denial of his motion to vacate. When Salomon filed his Chapter 7 case on September 22, 2010, his appeal was still pending before the California Court of Appeal. Salomon received his Chapter 7 discharge on December 28, 2010 (Tye timely filed this adversary proceeding on December 27, 2010), and the Chapter 7 case was closed on January 18, 2011. At no time did either party obtain relief from the automatic stay to

2

**MEMORANDUM DECISION DENYING REQUEST TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)**
Case: 10-05416   Doc# 87   Filed: 01/29/13   Entered: 01/29/13 12:10:04   Page 2 of 11

pursue the appeal[1].

This court issued a routine status conference order in this adversary proceeding, which set discovery deadlines. Despite ample time to conduct discovery, neither Tye nor Salomon completed any discovery by the original discovery cut-off date. At the request of the parties, this court continued the discovery cut-off date to July 31, 2012 and set the matter for trial on November 5, 2012.[2]

Tye did not file witness or exhibit lists as required by this court's pre-trial order. Instead, on October 30, 2012, Tye filed three motions *in limine*, which this court heard on November 5, 2012. Tye sought to preclude Salomon from introducing any evidence that would challenge the findings and damages award contained in the Superior Court default judgment. The court denied the first, second and fourth motions from the bench, and issued a memorandum order denying the third *in limine* motion, which explained this court's reasoning why the default judgment had no preclusive effect. *See* Docket No. 63. Simply put, a state court default judgment on appeal is not a final order entitled to issue preclusion (see *Georgraphic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d, 1106, n.3 (9th Cir. 2010)).

To repeat, Tye never filed a witness or exhibit list, and did not file a pre-trial request for this court to take judicial notice of anything. Notwithstanding these significant omissions, this court permitted Tye to testify at trial in narrative form. He was not allowed, however, to introduce any documentary evidence.

**FACTS**

In June 2007, Tye and Salomon entered into a month-to-month tenancy whereby Tye rented

---

[1] Tye filed a motion for relief from stay on July 1, 2011 to allow Salomon's appeal to proceed. Tye did not appear at the relief from stay hearing, and this court denied the motion for lack for lack of prosecution. In retrospect, the motion should have been denied as being moot, since Salomon had received his Chapter 7 discharge and the Chapter 7 case had been closed for several months before he filed the relief from stay motion.

[2] Tye filed a motion to change venue on July 18, 2012. He argued, *inter alia*, that his witnesses were located in Southern California, and that it was more convenient for them to appear for trial in the Central District of California. This court heard and denied his motion on August 31, 2012.

3

**MEMORANDUM DECISION DENYING REQUEST TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)**
Case: 10-05416    Doc# 87    Filed: 01/29/13    Entered: 01/29/13 12:10:04    Page 3 of 11

a bedroom, adjoining bathroom and enjoyed the use of common space in a four bedroom, three bathroom single family residence owned by Salomon, located at 24 Midsummer, Irvine, California (the "Premises"). At that time, Salomon lived in the master bedroom and rented out the remaining bedroom to another tenant. Salomon moved out of the Premises shortly after Tye moved in, and he rented the master bedroom to another tenant.

The relationship between Tye and Salomon was relatively harmonious until May 2008. At that time, Salomon asked Tye to clean the bathroom adjoining Tye's room in anticipation of a new tenant moving into the household. Since Tye had shared this bathroom with the outgoing roommate, he was expected to share this bathroom with the incoming roommate. This request triggered a series of disagreements between the Salomon and Tye, and on June 30, 2008 Salomon emailed Tye a 60-day notice to quit the premises[3].

Tye testified that Salomon then began a systematic pattern of harassment in retaliation for Tye's failure to quit the Premises.[4] Salomon's alleged harassment can be roughly grouped into the following categories of conduct: (a) restricting Tye's bathroom access, (b) interfering with Tye's use of the Premises's mailbox, (c) cutting off Tye's internet connection, and (d) rendering the Premises uninhabitable by canceling all the utilities and removing Salomon's appliances and furniture from the Premises. Tye testified that Salomon's retaliatory acts continued through January 2009.

### THE BATHROOM INCIDENT

Tye testified that Salomon interfered with his bathroom rights on six separate occasions, which caused Tye to miss 96 hours of work. Tye did not provide the specific dates when this conduct occurred, and Salomon's testimony provided ample reason for his actions regarding the bathroom. This court finds Salomon to be a more credible witness regarding these allegations.

---

[3] *See* Cal. Civ. Code §1946.1(b). Salomon emailed Tye another 60 day notice to quit on October 15, 2008. Salomon also emailed Tye a three-day notice to pay late rent for September and October on October 15, 2008, and another three-day notice for December rent on December 1, 2008. *See* Cal. Code of Civ. Proc. §1161.

[4] Salomon did not explain why he did not pursue the original and subsequent notices to quit.

4

Tye testified that his lease gave him exclusive and sole access to this particular bathroom (Tye did not introduce his written lease into evidence). Tye testified that Salomon's indiscretions include using the bathroom, without Tye's permission, for up to two hours at a time while playing loud music and singing along to the music. Tye further testified that Salomon also removed the shower curtain and other bathroom accessories in to prevent Tye from using the bathroom. Finally, Tye testified that Salomon stole bathroom supplies belonging to Tye's girlfriend.

Salomon denied these allegations. He testified that Tye shared this bathroom with at least one other roommate, and that he did not have exclusive rights to it. While Salmon agreed that he had occasionally used this bathroom, he testified that he spent a significant amount of time cleaning and repairing it, and he denied ever playing loud music or singing to the music when he used the bathroom. He also denied stealing any bathroom supplies. Given the lack of evidence other than the parties' own testimony, this court finds that Tye did not prove that the events in question occurred (or that Salomon was the culprit who stole his girlfriend's bathroom supplies) by a preponderance of the evidence.

### THE INTERNET TAMPERING

Tye testified that in November 2008, Salomon and, at Salomon's direction, Stacy Gilty (one of Tye's roommates), began tampering with his internet access, which Tye needed for his law practice[5]. The Premises' internet connection was located in the master bedroom, and Tye maintained that his internet access was unavailable on at least three separate occasions between mid-November 2008 and the end of December 2008. After his internet provider could not (by telephone) resolve the problem, Tye testified that he examined the routing box and discovered that the plug or switch connecting the internet to his room was unplugged. He corrected the problem by manually reconnecting this plug. Tye testified that Salomon was at the Premises on at least one of the occasions when his internet connection failed.

Tye testified further that in late December 2008, when Salomon was removing his furniture

---

[5]Tye is a licensed California attorney, and he practiced from the Premises. Tye did not maintain an "office" *per se* from the Premises, and would visit clients outside of the Premises.

5

**MEMORANDUM DECISION DENYING REQUEST TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)**
Case: 10-05416    Doc# 87    Filed: 01/29/13    Entered: 01/29/13 12:10:04    Page 5 of 11

and appliances from the Premises (which is discussed in more detail below), Salomon or his agents removed the power supply from the internet routing box. This power supply, according to Tye, was only accessible to the internet service provider. Tye claims that when a technician came to the Premises to repair the routing box, Stacy Gilty, again allegedly at Salomon's direction, prevented the technician from entering the Premises.

Gilty did not testify at trial, and Salomon denied any involvement in these incidents. The court again determines that Tye did not establish, by a preponderance of the evidence, that Salomon was the culprit. First, this court received only the testimony of the parties without any corroboration from any third party. Salomon again testified credibly on this issue. Second, Salomon did not reside at the Premises, and Tye had several roommates who had access to the master bedroom. Given the ease by which Tye's internet connection could be terminated, Tye's roommates could have unplugged the connection, or the plug could have become loose on its own (as plugs sometimes do). Moreover, there was insufficient evidence that Gilty (or any other tenant) was acting on Salomon's behalf.

## **MAILBOX TAMPERING INCIDENT**

Tye testified that before mid-November 2008, he never used his mailbox key because Stacy Gilty routinely retrieved the mail from the mailbox and left it on the kitchen counter. Gilty apparently terminated his mail duties in mid-November, and Tye testified that his mailbox key did not work. Tye further testified that Salomon refused to provide him with a replacement key, and that after his roommates vacated the Premises, he re-keyed the mailbox at his own expense, and found that the mailbox was empty.

Salomon denied that he interfered with Tye's mail or that Tye ever asked for another key. This court again finds Salomon to be a credible witness. Simply, Tye offered nothing more that his own suppositions that Salomon tampered with his mail. This testimony, in light of Salomon's denials, does not establish these allegations by a preponderance of the evidence.

## **THE FORECLOSURE**

There is little factual dispute, however, regarding Salomon's response to the potential of a trustee's sale against the Premises. Salomon encountered financial problems in the summer of 2008,

6

and a notice of default was recorded against the Premises in mid-December 2008. In anticipation of the trustee's sale, Salomon informed Tye and his fellow roommates by email on December 8th that he would be "signing the property over to the bank" on December 15, 2008, and that he would then terminate the Premises's utilities services. In late December 2008, Salomon began removing his personal property from the Premises, including all of the appliances and furniture. Tye testified that Salomon attempted to remove certain fixtures in his bedroom but that Tye prevented him from doing so. Tye remained on the Premises, however, for several more months.

Salomon did not voluntarily transfer title to the Premises to the Bank on December 15, 2008. Instead, he retained a real estate agent to short-sell the Premises. In January 2009, Salomon emailed the remaining tenants (including Tye) that there would be potential buyers and agents inspecting the Premises as part of his attempt to sell the Premises. Salomon also communicated to them that anyone who remained in the Premises still needed to pay rent (Salomon testified, however, that he never made any attempt to collect rent after November 2008).

Tye thereafter informed Salomon's real estate agent that he believed that Salomon did not intend to sell the Premises but instead had retained her to force Tye to vacate the Premises. Tye's refusal to cooperate with Salomon's marketing efforts apparently caused the real estate agent to terminate her services, and the lender foreclosed on the Premises in April 2009.

### LEGAL DISCUSSION

Tye claims that he is entitled to a non-dischargeable judgment under Bankruptcy Code § 523(a)(6). This code section provides in pertinent part that a Chapter 7 debtor cannot discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Tye must prove his claim for relief by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S.279, 291 (1991).

The "willful" and "malicious" prongs of § 523(a)(6) are analyzed separately. *In re Sicroff*, 401 F.3d 1101,1105 (9th Cir. 2005). The Ninth Circuit has held that an injury is 'willful' "when the debtor has a subjective motive to inflict [such] injury" or when the debtor believes that injury is "substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). A bankruptcy court may consider circumstantial evidence to establish what the

7

debtor must have known at the time of the conduct in question, rather than simply relying on what a debtor admits he knew. *Su*, at 1146, n. 6.

A "malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001). Malice may be inferred based on the nature of the wrongful act. *In re Ornsby*, 591 F.3d 1199, 1207 (9th Cir. 2010).

As for damages, while Tye asserts that he suffered some monetary damages due to his loss of work, he primarily asks this court to award him the $340,000 in damages found in the Superior Court's default judgment. The $340,000 in damages reflect statutory awards found in California Civil Code §§ 1942.5, 789.3, and 1940.2. These statutes award damages to a tenant when he or she is generally the victim of a "retaliatory eviction." The aggrieved tenant must establish that his/her landlord engaged in certain types of proscribed conduct to force the tenant to vacate the leased premises.

Tye has not met his burden of proof, and this court enters judgment in favor of Salomon. First with regard to the bathroom, internet, and mailbox allegations, this court is not persuaded that the events in question occurred and/or that Salomon was the culprit. At the very least, this court is not persuaded that Salomon used the bathroom wrongfully, with the intent of harming Tye, and that his use necessarily injured Tye.

Tye's mailbox claims are similarly defective. Tye did not present any credible evidence that Salomon or his agents intentionally prevented Tye from obtaining his mail with the intent of forcing Tye to vacate the Premises. Tye testified that he never used his mailbox key before mid-November 2008, so it is difficult for this court to conclude that the key ever worked on the mailbox, and that his subsequent inability to access his mail was due to a change in the mailbox lock. While Tye testified that Salomon refused to provide him with another key, Salomon denied that Tye requested a new key. Given this, Tye did not prove this allegation by a preponderance of the evidence.

Tye also cannot meet his burden of proof regarding his internet allegations. Salomon was only at the Premises during one of this incidents, and it is equally as likely that one of Tye's roommates dislodged or removed the plug, or that the plug was dislodged by other means. No

8

MEMORANDUM DECISION DENYING REQUEST TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)
Case: 10-05416    Doc# 87    Filed: 01/29/13    Entered: 01/29/13 12:10:04    Page 8 of 11

credible evidence was presented that Salomon intentionally interfered with Tye's internet connection with the intent of forcing him to vacate the Premises.

Finally, while Salomon admits that he removed his personal property from the Premises and terminated the utilities ahead of a trustee's sale, this court finds that Salomon's conduct was not willful or malicious. Salomon defaulted on his note and Tye does not dispute that the Premises' sale, either voluntary or involuntary, was inevitable. Salomon openly informed his tenants of the situation by email. Despite this, Tye contends that Salomon's conduct was part of an elaborate ruse, executed in bad faith, to force him to vacate the Premises. The court disagrees with his analysis of the evidence, and again finds Salomon to be a credible witness regarding the events in question. Salomon removed his personal property in anticipation of losing title to the Premises, terminated the utilities to reduce his expenses, and investigated a short sale to possibly reduce his liability on the bank note. Tye did not establish by a preponderance of the evidence that Salomon intended to harm or injure him or that his conduct was wrongful, despite the fact that a foreclosure or sale may have required Tye to find new living quarters.

Section 523(a)(6) claims for relief generally take the form of intentional torts. *See Lockerby v. Sierra*, 535 F.3d 1038 (9th Cir. 2008). While the California Civil Code sections cited by Tye do provide for damages for certain intentional, wrongful conduct (and thus may qualify for § 523(a)(6) relief), Tye has not established Salomon's liability under them (and § 523(a)(6)) due to his inability to establish willful, intentional conduct that harmed him. Under Civil Code § 789.3, a landlord is liable for statutory damages if, with the intent to terminate the occupancy under any lease, he willfully causes, directly or indirectly, the interruption or termination of any utility service furnished to the tenant. As stated above, this court finds that Salomon did not terminate the utilities with the intent to terminate Tye's occupancy, but instead did so due to the Premises' soon to be pending trustee's sale. Simply, Salomon's motivation was not to evict Tye. The same is true regarding Civil Code § 1940.2. This code section prohibits, *inter alia*, the use or threatened use of force, willful threats or menacing conduct constituting a course of conduct that interferes with a tenant's quiet

9

MEMORANDUM DECISION DENYING REQUEST TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)
Case: 10-05416   Doc# 87   Filed: 01/29/13   Entered: 01/29/13 12:10:04   Page 9 of 11

enjoyment of the premises. No such conduct was proven herein.[6] Finally, Tye did not establish that Salomon retaliated against him under § 1942.5.

This court recognizes the difficulty in establishing § 523(a)(6) intent. Regardless, Tye's evidence was insufficient for this court to find that Salomon willfully and maliciously injured Tye.

## CONCLUSION

Tye has failed to establish that Salomon's conduct caused a "willful and malicious injury" pursuant to § 523(a)(6) of the Bankruptcy Code. Accordingly, judgment is entered in Salomon's favor.

**\* \* \* END OF ORDER \* \* \***

---

[6] Nor did Tye prove that Salomon committed extortion (§ 1940.2(a)(1)) or engaged in theft (§ 1940.2(a)(2)).

10

MEMORANDUM DECISION DENYING REQUEST TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)
Case: 10-05416    Doc# 87    Filed: 01/29/13    Entered: 01/29/13 12:10:04    Page 10 of 11

**COURT SERVICE LIST**

Matthew Tye
49 Lehigh Aisle
Irvine, CA 92612

11

MEMORANDUM DECISION DENYING REQUEST TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(6)
Case: 10-05416    Doc# 87    Filed: 01/29/13    Entered: 01/29/13 12:10:04    Page 11 of 11